UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JOHN JONES, III,

              Plaintiff,

v.

BNSF RAILWAY COMPANY, a Delaware corporation,

              Defendant.

CASE NO. C10-05480BHS

ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT (WALKING ON BALLAST)

This matter comes before the Court on Defendant BNSF Railway Company's ("BNSF") Motion for Partial Summary Judgment (Walking on Ballast) (Dkt. 32). The Court has considered the pleadings filed in support of, and in opposition to, the motion and the remainder of the file. For the reasons stated herein, the Court hereby denies the motion.

## I. FACTUAL AND PROCEDURAL HISTORY

Defendant BNSF operates approximately 1,300 trains across a network of 28 states and two Canadian provinces. Dkt. 32 at 2. At all times material hereto, Plaintiff John Jones, III ("Jones") was an employee of BNSF, primarily serving as a switchman/brakeman and locomotive engineer. Dkt. 1 at 2; Dkt. 32 at 1. In that capacity, Jones was required to continually walk on railroad ballast. *Id*. at 2; Dkt. 35 at

1-2. Ballast is the crushed rock that provides the support, drainage, and alignment for and around the tracks. Dkt. 32 at 2; 49 C.F.R. § 213.103.

On July 7, 2010, Jones filed a complaint against BNSF under the Federal Employers Liability Act, 51 U.S.C. § 51, *et seq.* *See* Dkt. 1. On September 12, 2011, Jones amended his complaint by adding claims under the Federal Railroad Safety Act of 1994, 49 U.S.C. § 20101, *et seq.*, and the Locomotive Inspection Act, 49 U.S.C. § 20701, *et seq.* *See* Dkt. 28. In his amended complaint, Jones alleges that, during the course of his employment, he suffered "cumulative trauma" injuries to his body (including back, neck, and shoulders) due to "heavy manual work activity" and exposure to "continuous and jostling, jarring and lateral movement of the locomotive and other parts of a moving train . . . ." Dkt. 1 at 3.

Jones claims that BNSF was negligent for: (1) failing to exercise due care in providing him with a reasonably safe and healthy work environment; (2) failing to provide reasonably safe equipment, tools and machinery and adequate personnel; (3) failing to take adequate precautionary steps to protect him from reasonably foreseeable dangers associated with his work; (4) failing to protect him from repetitive stress; (5) failing to periodically monitor and assess his health to determine whether he was being adversely affected by the repetitive stress; (6) failing to warn him of the latent potential health risks and hazards associated with cumulative daily exposure to repetitive stress; (7) failing to provide him with a proper and safe locomotive engine to operate; and/or (8) failing to take reasonable action to protect him from injury. Dkt. 28 at 6-7.

On October 20, 2011, BNSF filed a motion for partial summary judgment on what BNSF calls Jones's "ballast claim." Dkt. 32. BNSF argues that (1) Jones cannot make out a prima facie case under the Federal Employer's Liability Act; and (2) even if Jones could show negligence, his claim is precluded and preempted by the Federal Railway Safety Act ("FRSA"), 49 U.S.C. § 20101, *et seq.*, and/or the Interstate Commerce Commission Termination Act ("ICCTA"), 49 U.S.C. § 10101, *et seq. See* Dkt. 32 at 10-21. On November 7, 2011, Jones filed a response. Dkt. 35. On November 11, 2011, BNSF filed a reply. Dkt. 38.

## II. DISCUSSION

**A.     Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or

jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc*., 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.    Federal Employer's Liability Act**

Enacted in 1908, the Federal Employer's Liability Act ("FELA") provides a broad, federal tort remedy for railroad workers injured on the job. 45 U.S.C. § 51. It reads in pertinent part:

> Every common carrier by railroad while engaging in [interstate] commerce . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier . . . or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery . . . or other equipment.

*Id*. "Cognizant of the physical dangers of railroading that resulted in the death or maiming of thousands of workers every year," Congress enacted FELA to "shift[] part of the human overhead of doing business from employees to their employers." *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 542 (1994) (citations omitted).[1]

The Supreme Court has explained that FELA "is founded on common-law concepts of negligence and injury, subject to such qualifications as Congress has imported into those terms." *Urie v. Thompson*, 337 U.S. 163, 182 (1949). While a railroad has a duty to use ordinary care to protect employees from known dangers, the Supreme Court has also established that a railroad breaches its duty to its employees by failing to provide a safe working environment if it knew or should have known that it was not acting adequately to protect its employees. *Id*. at 181-82. Under FELA, the Ninth Circuit has imposed on common carriers a duty "broader than the general duty to use reasonable care," and this duty includes a duty to provide "reasonably safe and suitable tools, machinery and appliances with which to work." *Ragsdell v. Southern Pac. Transp. Co.*, 688 F.2d 1281, 1283 (9th Cir. 1982). Indeed, to further its remedial underpinnings, the Supreme Court has construed FELA liberally to relax the standards of causation. *Gottshall*, 512 U.S. at 532 (citing cases); *see also Claar v. Burlington Northern R.R. Co.*, 29 F.3d 499, 503 (9th Cir. 1994) ("under FELA the quantum of evidence sufficient to present a jury question of causation is less than it is in a common law tort action").

---

[1] In so doing, Congress abolished the fellow-servant rule, rejected contributory negligence in favor of comparative negligence, and abolished the assumption of risk defense. 45 U.S.C. §§ 51-54; *see also Gottshall*, 512 U.S. at 543.

Still, FELA "is not an insurance statute." *Id*. at 554. The basis of liability "is . . . negligence, not the fact that injuries occur." *Ellis v. Union Pacific Ry. Co.*, 329 U.S. 649, 653 (1947). A plaintiff may not recover simply because he was injured in the course of his employment on the railroad. *See Gottshall*, 512 U.S. at 543. Likewise, a plaintiff may not recover simply because of conditions he encountered as part of his job requirements. *Stevens v. Bangor & Aroostook R. Co.*, 97 F.3d 594, 598 (1st Cir. 1996) ("The employer's duty to maintain a safe workplace does not require all dangers to be eradicated, but it does demand the elimination of those that can reasonably be avoided in light of the normal requirements of the job."). Therefore, consistent with common-law negligence principles, a FELA plaintiff bears the burden of proving the existence of a duty owed by the defendant, a breach of that duty, causation, and damage. *See Gotshall*, 512 U.S. at 538; *Fulk v. Ill. Cent. R. R. Co.*, 22 F.3d 120, 124 (7th Cir. 1994). The test for a jury case is whether the record reasonably justifies the conclusion that the employer railroad's negligence "played any part, even the slightest," in producing the injury. *Gotshall*, 512 U.S. at 543; *Burlington Northern R.R. Co.*, 29 F.3d at 503.

**C.     Prima Facie Case for Negligence**

BNSF asks for partial summary judgment to dismiss Jones's "ballast claim," which it argues is "one of two main claims in this lawsuit." Dkt. 32 at 2; Dkt. 38 at 2. In so doing, BNSF describes the nature of the work that its employees typically perform on and around the ballast and the specific federal regulations that authorize this work. Dkt. 32 at 2-8. Calling the activity "necessary and indispensable conditions" of employment, BNSF argues that it did not breach any duty owed to Jones and that there is

no evidence that working on ballast is *ipso facto* negligent. *Id*. at 2. BNSF also argues that Jones has not claimed that the ballast had any defects or debris. *Id*. at 2, 7-8. BNSF contends that Jones cannot make a prima facie case for negligence. *Id*. at 2.

As an initial matter, the Court finds that BNSF has misconstrued the complaint. Nowhere in the complaint does Jones assert a stand-alone "ballast claim" or otherwise allege that walking on the ballast *singularly* caused the alleged injuries that triggered his lawsuit. Rather, to the extent that any ballast-related allegation is interspersed in the complaint, the Court finds that such an allegation is just one of several factual components of the complaint underlying Jones's negligence claim. Indeed, with respect to his negligence claim, Jones makes broad allegations that BNSF failed in its duty to provide a safe working environment. *See* Dkt. 28 at 3-8. When asked in discovery to provide details of the work environment, Jones listed at least seven conditions that he claims contributed to his bodily injuries over the years – and just one of those conditions involved the ballast. Dkt. 36 at 7. For example, Jones claims that the work environment caused him to inhale noxious fumes, to sit for prolonged periods on a bouncing non-ergonomic 50-pound engine, and to repetitively bend and twist to perform certain tasks. Dkt. 36 at 7.[2] Accordingly, the Court disagrees with BNSF's contention that the ballast-related allegation constitutes one of the two main claims in the lawsuit.[3]

---

[2] BNSF has not asked the Court, nor provided a sufficient record for the Court, to address those allegations.

[3] The Court will not individually address the thirty-plus cases that BNSF cites in the section of its motion pertaining to this issue. *See* Dkt. 32 at 11-12. To be sure, none of the

But even in addressing the ballast "component" of the complaint, the Court finds the current record inadequate to justify a ruling in BNSF's favor. BNSF essentially argues that because Jones has not claimed that the ballast was defective, any liability arising from injuries allegedly sustained in part from repetitive walking on the ballast cannot be assigned to BNSF. Alternately, BNSF argues that Jones's ballast theory fails because Jones admitted in his deposition that his training at BNSF was adequate. Although the Court finds BNSF's arguments compelling, the Court must weigh all evidence on this motion in the light most favorable to Jones and with due regard to the liberal standards of causation under FELA. Discovery in the case is still ongoing, and, conceivably, Jones could provide evidence that, notwithstanding BNSF's apparent compliance with federal regulations with respect to the composition of the ballast, BNSF's failure to provide training on how to walk on the ballast constitutes a breach of its general duty to provide a safe work environment. Moreover, although the Court acknowledges BNSF's concern regarding Jones's seemingly conflicting testimony on whether or not he received adequate on-the-job training, the Court must provide Jones with full opportunity under the case schedule to establish, as he must, that BNSF's alleged failure to provide adequate ballast-related training caused the alleged injuries.[4]

---

extensive string-cites involved the precise allegations present here, and the Court finds that they are of little value in considering this motion.

[4] Jones admitted in his deposition that he had "33 years of training with the railroad," and when asked whether his training at BNSF was adequate to do his job safely, Jones responded "Yes." Dkt. 39-1 at 3. The Court finds that this testimony indeed undercuts any argument that Jones would have altered his walking on the ballast had BNSF shown him the video titled "Walking Safely on Ballast" that BNSF apparently produced in 1998. But barring Jones's entire

*Gotshall*, 512 U.S. at 543. At this stage of the litigation, and on this record, the Court cannot dismiss the ballast component of Jones's claim. To be clear, this ruling does not preclude BNSF from bringing another similarly purposed motion before trial once discovery is complete.

**D.     Preclusion**

BNSF next argues that Jones's negligence claim under FELA fails because it conflicts with, and is superseded or precluded by, both the Federal Railway Safety Act ("FRSA") and the Interstate Commerce Commission Termination Act ("ICCTA"). Dkt. 32 at 14. The Court discusses each one in turn.

**1.     FRSA**

The FRSA was enacted in 1970 with the purpose of promoting "safety in every area of railroad operations and reduc[ing] railroad-related accidents and incidents." *Norfolk Southern Ry. Co. v. Shanklin*, 529 U.S. 344, 347 (2000) (quoting 49 U.S.C. § 20101). The FRSA contains an express preemption provision and provides that "[l]aws, regulations, and orders related to railroad safety . . . shall be nationally uniform to the extent practicable."[5] 49 U.S.C. § 20106(a)(1). The FRSA authorizes the Secretary of

---

ballast theory based on that testimony alone is a drastic result under the circumstances. Consistent with this finding, the Court denies BNSF's motion to strike the portion of Jones's declaration that conflicts with his prior deposition testimony.

[5] The FRSA's express preemption provision provides:

> A state may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation . . . prescribes a regulation or issues an order covering the subject matter of the State requirement. A State may adopt or continue in force an additional or more stringent law, regulation or order related to railroad safety or security when the law, regulation, or order

Transportation ("Secretary") to "prescribe regulations and issue orders for every area of railroad safety." *Shanklin*, 529 U.S. at 344 (quoting 49 U.S.C. § 20103(a)). Pursuant to this directive, the Secretary, acting through the Federal Railroad Administration, has promulgated regulations covering track safety standards. *See* 49 C.F.R. pt. 213. These regulations "prescribe[ ] minimum safety requirements for railroad track that is part of the general railroad system of transportation." 49 C.F.R. § 213.1.

BNSF argues that Jones's "ballast-related negligence claim" fails because FRSA "allow[s] (and at times) require[s]" employees to work on mainline ballast. Because "the issue of working on mainline ballast is expressly, implicitly, and repeatedly covered by the [relevant] C.F.R.s (sic)," BNSF contends that the FRSA precludes Jones's claim.

The Court agrees that certain FRSA-promulgated regulations govern work on the ballast, *see* 49 C.F.R. § 213.103, but disagrees that those regulations preclude Jones's negligence claim. As explained above, Jones has implicated in his complaint various workplace activities, *including but not limited to*, walking on the ballast. If this case involved purely a "ballast claim," as BNSF suggests, then the Court acknowledges that the regulations and case law, which BNSF cites, could arguably under certain fact patterns preclude Jones's claim. But the Court is not aware of any authority that has interpreted the FRSA so broadly as to prescribe the duties of an employer to maintain a

---

    (1) is necessary to eliminate or reduce an essentially local safety or security hazard;
    (2) is not incompatible with a law, regulation, or order of the United States Government; and
    (3) does not unreasonably burden interstate commerce.

49 U.S.C. § 20106(a)(2).

safe working environment, including providing adequate safety training or reasonably safe tools and equipment for the job.[6]

Accordingly, the Court is not persuaded by BNSF's argument that the federal regulations "substantially subsume the subject matter" of Jones's claims. *Easterwood*, 507 U.S. at 664. The Court finds that summary judgment on this issue is improper.

**2. ICCTA**

In 1995, Congress enacted the ICCTA, which provided the Surface Transportation Board ("STB") with broad jurisdiction over transportation by rail carriers. *Fulfillment Servs. Inc. v. United Parcel Serv., Inc.*, 528 F.3d 614, 616-17 (9th Cir. 2008). The STB has exclusive jurisdiction over

> (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and
> (2) the construction, acquisition, operation, abandonment, or discontinuance of . . . tracks, or facilities . . . .

---

[6] BNSF cites to *Nickels v. Grand Truck Western R.R., Inc.*, 560 F.3d 426 (6th Cir. 2009), to argue that FRSA precludes Jones's ballast-related negligence claim. But, in *Nickels*, the plaintiffs, who were former railway employees, brought a FELA action alleging injuries caused by years of walking on oversized track ballast. *Id*. at 428. Their claim, therefore, was based exclusively on ballast size. *Id*. at 431. In that narrow context, the court held that FRSA-promulgated regulations "substantially subsume[d] the issue of ballast size." *Id*. For reasons explained, the facts of this case are easily distinguished.
Likewise, BNSF misses the mark with its reference to this district court's decision in *Balsley v. BNSF Railway Co.*, 2010 WL 4857284 (W.D. Wash. Nov. 22, 2010). BNSF argues that, in *Balsley*, Judge Robert J. Bryan suggested that the FRSA precluded the exact FELA action at issue here and "appeared to accept the reasoning relating to *walking* on ballast" as it concerned FRSA pre-emption. Dkt. 32 at 18 (emphasis in original). But, again, "walking on ballast" is not the sole issue before the Court (and, indeed, it was not the sole issue before the *Balsley* court either). *See Balsley*, 2010 WL 4857284 at *5. The Court finds BNSF's reliance on *Balsley* misplaced.

*Association of Am. Railroads v. South Coast Quality*, 622 F.3d 1094, 1096-97 (9th Cir. 2010) (quoting 49 U.S.C. § 10501(b)).

The ICCTA also contains an express preemption clause: "[T]he remedies provided under this part with respect to the regulation of rail transportation are exclusive and preempt the remedies provided under Federal and State law." 49 U.S.C. § 10501(b).

In asserting that Jones's claim substantially impacts railroad operations and, therefore, is preempted by ICCTA, BNSF argues that the STB is the proper tribunal for addressing the claim. Dkt. 32 at 20. BNSF contends that holding it liable under FELA for Jones's injuries would cause BNSF to "reduce where railroaders can work to less than 27 [percent] of BNSF's tracks." *Id*. The Court finds the argument unpersuasive for the same reasons that Judge Bryan found a near-identical argument unpersuasive in *Balsley*, 2010 WL 4857284. As Judge Bryan reasoned:

> Taken to its logical conclusion, BNSF's argument would prevent nearly any type of recovery under the FELA for negligence, because holding a defendant liable in a negligence action is designed, in part, to persuade the defendant to modify its behavior or operations. There is no evidence to suggest that precluding recovery under FELA was the intent of the ICCTA.

2010 WL 4857284 at *6. Here, Jones has asserted claims that require the trier of fact to determine whether and to what extent BNSF breached any duty to provide Jones with a safe working environment, as explained in the complaint and Jones's discovery responses, and whether that breach caused Jones's injuries. From those unremarkable allegations, the Court cannot logically deduce that a ruling against BNSF would cause BNSF to close off work on 63 percent of its tracks. Accordingly, the Court denies BNSF summary judgment on this issue.

# III. ORDER

Therefore, it is hereby **ORDERED** that Defendant's Motion for Partial Summary Judgment (Walking on Ballast) (Dkt. 32) is **DENIED without prejudice**; this order does not preclude BNSF from filing, once discovery is complete, a similarly purposed motion to bar Jones from introducing at trial any ballast-related evidence.

Dated this 4th day of January, 2012.

BENJAMIN H. SETTLE
United States District Judge